**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| INGURAN, LLC d/b/a STGENETICS, XY, LLC, and CYTONOME/ST, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> ABS GLOBAL, INC., GENUS PLC, and PREMIUM GENETICS (UK) LTD, <br><br> Defendants. | Case No.  17-cv-446 |

**<u>DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

BACKGROUND ...................................................................................................2

    A.    ST's Breach of Contract Claim.................................................2

    B.    XY's Trade Secret Claims .......................................................5

ARGUMENT .......................................................................................................7

    I.    ST'S BREACH OF CONTRACT CLAIM IS PRECLUDED BY THIS COURT'S PRIOR JUDGMENT ON THE SAME CLAIM.........................................8

        A.    ST's Breach of Contract Claim Involves the Same Parties as in *ABS I*.......9

        B.    ST's Contract Claim Involves the Same Cause of Action as in *ABS I*. .....10

        C.    *ABS I* Was Resolved by a Final Judgment on the Merits. ........................13

    II.    XY'S CLAIMS FOR MISAPPROPRIATION OF TRADE SECRETS SHOULD ALSO BE DISMISSED....................................................................14

        A.    XY's Trade Secret Claims Are Precluded by a Prior Judgment on the Same Cause of Action.................................................................14

        B.    If XY's Claim Under the Defend Trade Secrets Act Were Not Precluded, It Would Fail As a Matter of Law............................................20

        C.    If XY's Claim Under the Defend Trade Secrets Act Is Dismissed, the Court Should Decline to Exercise Jurisdiction Over XY's State-Law Claim Against Premium Genetics............................................21

    III.    IF XY'S CLAIMS AGAINST PREMIUM GENETICS WERE NOT PRECLUDED, THEY WOULD STILL BE SUBJECT TO DISMISSAL BECAUSE THE COURT HAS NO PERSONAL JURISDICTION OVER PREMIUM GENETICS...................................................................21

CONCLUSION...................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. City of Indianapolis*,
　742 F.3d 720 (7th Cir. 2014) ........................................................................8, 9, 17

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
　751 F.3d 796 (7th Cir. 2014) .................................................................................23

*Alexander v. Chicago Park Dist.*,
　773 F.2d 850 (7th Cir. 1985) ...........................................................................13, 15

*Allstate Ins. Co. v. Electrolux Home Prods., Inc.*,
　No. 1:14-cv-329, 2014 WL 3615382 (N.D. Ohio July 18, 2014)..........................22

*Anchor Glass Container Corp. v. Buschmeier*,
　426 F.3d 872 (7th Cir. 2005) .................................................................................17

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009).................................................................................................7

*State ex rel. Barksdale v. Litscher*,
　685 N.W.2d 801 (Wis. App. 2004)...................................................................17, 19

*In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*,
　333 F.3d 763 (7th Cir. 2003) ...................................................................................8

*Car Carriers, Inc. v. Ford Motor Co.*,
　789 F.2d 589 (7th Cir. 1986) ................................................................7, 10, 11, 13

*Carr v. Tillery*,
　591 F.3d 909 (7th Cir. 2010) ...........................................................................12, 16

*Cent. States v. Reimer Express World Corp.*,
　230 F.3d 934 (7th Cir. 2000) .................................................................................22

*CFE Grp., LLC v. FirstMerit Bank, N.A.*,
　809 F.3d 346 (7th Cir. 2015) ...................................................................................8

*Cisco Systems, Inc. v. Alcatel USA, Inc.*,
　301 F. Supp. 2d 599 (E.D. Tex. 2004).............................................................11, 12, 13

*Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr.*,
　692 F.3d 580 (7th Cir. 2012) ...................................................................................4

*Czarniecki v. City of Chicago*,
    633 F.3d 545 (7th Cir. 2011) ........................................................16

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014).......................................................................22

*Dunlap v. Cottman Transmissions Sys., LLC*,
    No. 16-2318, 2017 WL 1960399 (4th Cir. May 11, 2017)...............18, 20

*Fantasy Inc. v. La Face Records*,
    No. 96-cv-4384, 1998 WL 916481 (E.D. Cal. Nov. 12, 1998)............19

*Federated Dep't Stores, Inc. v. Moitie*,
    452 U.S. 394 (1981)........................................................................13

*FleetBoston Fin. Corp. v. Alt*,
    638 F.3d 70 (1st Cir. 2011) ............................................................18

*Gen. Elec. Capital Corp. v. Lease Resolution Corp.*,
    128 F.3d 1074 (7th Cir. 1997) .........................................................3

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011)........................................................................22

*Hanlon v. Town of Milton*,
    612 N.W.2d 44 (Wis. 2000).............................................................9

*Hatmaker v. Mem'l Med. Ctr.*,
    619 F.3d 741 (7th Cir. 2010) ..........................................................16

*Jones v. Int'l Ass'n of Bridge Structural Ornamental & Reinforcing Iron Workers*,
    864 F. Supp. 2d 760 (E.D. Wis. 2012)..............................................10

*JSC Sec., Inc. v. Gebbia*,
    4 F. Supp. 2d 243 (S.D.N.Y. 1998) .................................................18

*Kruckenberg v. Harvey*,
    694 N.W.2d 879 (Wis. 2005)...........................................................11

*Leaf v. Supreme Court*,
    979 F.2d 589 (7th Cir. 1992) ..........................................................9

*Lietha v. Bank of Am., N.A.*,
    No. 14-cv-442, 2015 WL 1457428 (W.D. Wis. Mar. 30, 2015).......3, 7, 8

*Lubrizol Corp. v. Exxon Corp.*,
    929 F.2d 960 (3d Cir. 1991).............................................................18, 20

iii

*Manu-Tronics, Inc. v. Effective Management Systems-Wisconsin, Inc.*,
     471 N.W.2d 263 (Wis. App. 1991) ...................................................................17

*Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*,
     58 F.3d 616 (Fed. Cir. 1995) ...........................................................................20

*Menard, Inc. v. Liteway Lighting Prods.*,
     698 N.W.2d 738 (Wis. 2005) ..................................................................... *passim*

*Mgmt. Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.*,
     No. 98-1042, 1999 WL 23212 (Wis. App. Jan. 21, 1999) ......................................10

*N. States Power Co. v. Bugher*,
     525 N.W.2d 723 (Wis. 1995) ..........................................................................10

*Nat'l Spiritual Assembly of Bahá'ís Under Hereditary Guardianship, Inc. v. Nat'l
     Spiritual Assembly of Bahá'ís, Inc.*,
     628 F.3d 837 (7th Cir. 2010) ......................................................................17, 20

*Nelson v. Park Indus., Inc.*,
     717 F.2d 1120 (7th Cir. 1983) .........................................................................22

*Palka v. City of Chicago*,
     662 F.3d 428 (7th Cir. 2011) ...........................................................................9

*Parungao v. Cmty. Health Sys., Inc.*,
     858 F.3d 452 (7th Cir. 2017) (per curiam) .....................................................10, 19

*Roberts v. City of Chicago*,
     817 F. 3d 561 (7th Cir. 2016) ..........................................................................3

*Ross ex rel. Ross v. Bd. of Educ.*,
     486 F.3d 279 (7th Cir. 2007) ..........................................................................13

*Salessi v. Commonwealth Land Title Ins. Co.*,
     No. 08-cv-1274, 2013 WL 5676209 (C.D. Cal. Oct. 16, 2013) ............................18

*Semtek Int'l Inc. v. Lockheed Martin Corp.*,
     531 U.S. 497 (2001) .....................................................................................8

*Supporters to Oppose Pollution, Inc. v. Heritage Grp.*,
     973 F.2d 1320 (7th Cir. 1992) .........................................................................18

*Twersky v. Yeshiva Univ.*,
     112 F. Supp. 3d 173 (S.D.N.Y. 2015) ...............................................................8

*United Mine Workers v. Gibbs*,
     383 U.S. 725 (1966) ....................................................................................21

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014)........................................................................................23

*Wis. Pub. Serv. Corp. v. Arby Constr., Inc.*,
    818 N.W.2d 863 (Wis. 2012)..............................................................................7

*Zientek v. Smith*,
    No. 95-1498, 1996 WL 397183 (Wis. App. July 17, 1996) ..................................12

**Statutes and Rules**

18 U.S.C. § 1836.................................................................................................6, 20

28 U.S.C. § 1367(a) ................................................................................................21

Defend Trade Secrets Act § 2(e), Pub. L. No. 114-153 (May 11, 2016)......................20

Fed. R. Civ. P. 12(b)(2)..........................................................................................2, 3

Fed. R. Civ. P. 12(b)(6)............................................................................................2

Fed. R. Civ. P. 12(c) ...............................................................................................7

Fed. R. Civ. P. 54(b) ..............................................................................................13

**Other Authorities**

18A Wright & Miller, *Federal Practice & Procedure* § 4432 (2d ed. 2017)................13

## INTRODUCTION

Three years ago, ABS Global, Inc. ("ABS") filed an antitrust case against Inguran, LLC d/b/a Sexing Technologies (now STGenetics) ("ST") to obtain relief from ST's monopolistic conduct and open up the sexed semen processing market to competition.  (Dkt. 1.[1])  ST responded with counterclaims against ABS and its parent company, Genus plc ("Genus"), and ST's subsidiary, XY, LLC ("XY"), intervened to assert counterclaims as well.   (Dkt. 199, 302.) One of ST and XY's primary themes in *ABS I* involved the story of a former XY employee named Kathy Mean, who brought confidential XY sorting protocols with her when she joined ABS.  (Dkt. 722 at 31:17–23.)  ST claimed that the use and disclosure of those protocols was a breach of the parties' 2012 contract, and XY asserted that the same use and disclosure was a misappropriation of its trade secrets.  (Dkt. 199 at ¶¶ 217–21; Dkt. 302 at ¶¶ 223–24.)

When the dust settled, ABS had prevailed on its monopolization claim, and ST and XY had prevailed on their claims regarding the sorting protocols.  (Dkt. 790.)  ABS paid ST and XY the damages that were due (Dkt. 832), and this Court granted ABS a permanent injunction designed to remove ST's "restrictions on competition" in "an orderly, staggered and predictable fashion respectful of ST's intellectual property rights, as well as the need for meaningful competition."  (Dkt. 772 at 77.)  Neither side got all the relief sought in its pleadings, though both had a full and fair opportunity to take discovery, present evidence, and request a remedy.

But now ST and XY are back, and they want new relief on their old claims.  They again say they have been harmed by disclosures of the XY protocols that Kathy Mean brought to ABS, and they ask for a mix of actual damages, punitive damages, and an injunction that would bar the use of ABS's GSS Technology, which was at the center of *ABS I.*  But the disclosures described

---

[1] All citations to docket entries refer to *ABS Global, Inc. v. Inguran, LLC d/b/a Sexing Technologies*, No. 14-cv-503 (W.D. Wis.), which is referred to as "*ABS I.*"

in the new complaint occurred before the operative pleadings in *ABS I* were filed; they fall squarely within the scope of the claims asserted in that case; and they were the subject of discovery.  The judgment in *ABS I* precludes ST and XY from litigating any issues that were or could have been raised in connection with their earlier breach of contract and trade secret claims.  Accordingly, the breach and trade secret claims in this case should be dismissed on res judicata grounds pursuant to Fed. R. Civ. P. 12(b)(6).

XY has named as a defendant an ABS and Genus affiliate that was not a party to *ABS I*—Premium Genetics (UK) Ltd. ("Premium Genetics")—but that cannot revive the precluded claims.  Claim preclusion protects not only the parties to a final judgment but also those in privity with them, and XY's own complaint confirms that Premium Genetics has just the kind of close relationship with Genus (which owns Premium Genetics) and ABS (its sister company) that would allow Premium Genetics to rely on the judgment in *ABS I*.  The claims against Premium Genetics should therefore be dismissed as well.

Even if the claims against Premium Genetics were not precluded, they would still be subject to dismissal on an alternate ground.  Premium Genetics is a British company with no property in Wisconsin and no Wisconsin-based employees, and the person acting on Premium Genetics's behalf in connection with the asserted disclosure was an outside attorney in Virginia.  Accordingly, the claims against Premium Genetics should be dismissed under Fed. R. Civ. P. 12(b)(2) for the alternate reason that it is not subject to personal jurisdiction in this Court.

## BACKGROUND

### A.    ST's Breach of Contract Claim

This is the second time ST has sued ABS for breaching the confidentiality provisions of the 2012 Agreement by improperly disclosing or using the same confidential information.

ST filed its operative counterclaims in *ABS I* on February 5, 2016.  (Dkt. 302.[2])  In its pleading, ST alleged that ABS "had breached paragraph 16 of the 2012 Agreement by improperly disclosing and using 'ST's Confidential Information.'"  (*Id.* at ¶ 223.)  Specifically, ST claimed that ABS had "improperly disclosed and/or used Inguran's confidential information and trade secrets in its laser-based sex-sorting technologies and other sex-sorting technologies."  (*Id.*)  ST further alleged that it was harmed by the "loss of [its] confidential information."  (*Id.* at ¶ 224.)

ST pursued this claim through discovery and trial, ultimately persuading the jury that ABS had "failed to comply with the confidentiality provision . . . by using or disclosing ST's . . . media protocols."  (Dkt. 692 at 29 (jury instructions); Dkt. 698 (verdict).)  ST did not prove any actual damages or seek an injunction, and the Court entered judgment in ST's favor for nominal damages "on ST's claim that ABS and Genus materially breached the confidentiality provision of the 2012 Agreement."  (Dkt. 790 at ¶ 17; *see also* Compl. ¶ 21.)

ST is now back for new relief on its old claim.  The new complaint "seek[s] an injunction against ABS's use or disclosure of ST's confidential information."  (Compl. ¶ 7.[3])  Among other things, ST would like this Court to bar ABS from the "use of any protocols or instruments incorporating or *derived from* ST's Confidential Information."  (*Id.* at 33 (emphasis added).)

---

[2] Although a motion to dismiss generally focuses on the allegations in the complaint, courts can "take judicial notice of matters of public record without converting a motion for failure to state a claim into a motion for summary judgment."  *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997); *see also Lietha v. Bank of Am., N.A.*, No. 14-cv-442, 2015 WL 1457428, at *2 (W.D. Wis. Mar. 30, 2015) ("a court may take judicial notice of documents that are part of the public record, including pleadings, orders and transcripts from prior proceedings").

[3] For purposes of this motion to dismiss, Defendants accept all well-pleaded factual allegations of the complaint as true.  *See, e.g.*, *Roberts v. City of Chicago*, 817 F. 3d 561, 564 (7th Cir. 2016).

The requested injunction is designed to block ABS's GSS Technology, which the complaint says "was derived from confidential ST and XY protocols."  (*Id.* at ¶ 21.)

ST's new complaint repackages its old claim in more detailed factual allegations. Whereas before ST alleged generically that ABS had "improperly disclos[ed]" ST's confidential information (Dkt. 302 at ¶ 223), ST now describes a specific disclosure.  ST alleges that ABS "breached paragraph 16 of the Agreement by improperly disclosing ST's Confidential Information to Premium Genetics," which in turn incorporated the information in a patent application.  (Compl. ¶ 81.)  ST alleges that both Premium Genetics and ABS are responsible for then "allow[ing] the patent office to publish" the application (*id.* at ¶¶ 66, 84), which "diminished or eliminated the economic value of the portions of ST's Confidential Information that were disclosed."  (*Id.* at ¶ 86.)

Premium Genetics filed the relevant application—U.S. Patent Application No. 14/308,499 ("the '499 application")—on June 18, 2014.[4]  Accordingly, ST's breach claim is based on a disclosure from ABS to Premium Genetics that must have occurred before ABS had even filed its complaint in *ABS I* on July 14, 2014.  (Dkt. 1.)  The '499 application then published on April 30, 2015 (Compl. ¶ 66), nine months before ST filed its operative second amended counterclaims in *ABS I* (Dkt. 302), and more than a year before the May 2016 discovery cutoff in that case.  (Dkt. 159, 173.)  The published version of the '499 application was identified on ABS's trial exhibit list (Dkt. 490 at 40 (PX 415, U.S. Patent Pub. No. 2015/0114093), but it was not introduced at trial.  (Dkt. 702 at 27.)

---

[4] This filing date appears on the face of Premium Genetics's U.S. Patent No. 9,588,100, which is referred to repeatedly in the complaint (Compl. ¶¶ 20, 23, 68, & 75), and is central to Plaintiffs' claims.  *See, e.g.*, *Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr.*, 692 F.3d 580, 591 (7th Cir. 2012) ("In deciding a motion to dismiss for failure to state a claim we may consider documents . . . referenced in the pleading if they are central to the claim.").  Defendants attach the '100 patent as Exhibit A to the Declaration of Steven J. Horowitz ("Horowitz Decl.").

ST deposed two of the named inventors on the '499 application (*see* Dkt. 439 (Marj Faust), 462 (Jeff Betthauser)),[5] and called one of them at trial (Dkt. 718 at 65:12 (Jeff Betthauser)). Although ST chose not to explore the subject at trial, Mr. Betthauser testified at his deposition that, on June 12, 2014, Kathy Mean had sent him and others at ABS some "recipes" (or "media protocols") for use in "a patent application." (Dkt. 462 at 99:5–100:17.) Likewise, Kathy Mean herself testified at deposition that she had provided "consolidated write-ups" of certain protocols to Marj Faust so that Dr. Faust could "prepare some patent documents." (Dkt. 308 at 98:20–100:14.)

### B.     XY's Trade Secret Claims

This is also the second time that XY has claimed that "Genus and ABS are liable to XY for misappropriation of XY trade secrets." (Compl. ¶ 71.)

On December 9, 2015—seven months after the '499 application published—XY filed its operative counterclaims in *ABS I*, in which XY first asserted a trade secret misappropriation claim. (Dkt. 199 at ¶¶ 217–21.) Then, as now, the XY trade secrets at issue were "XY's protocols for the sexing and freezing of . . . sperm" (*id.* at ¶ 218), which ABS had allegedly obtained "through targeted hiring of former XY employees." (*Id.* at ¶ 219.) XY alleged that it suffered damages "[a]s a direct result of the disclosure and use of XY's confidential and trade secret information by ABS and Genus." (*Id.* at ¶ 221.) XY sought actual and punitive damages, as well as an injunction that would bar ABS, Genus, and "all those in active concert or participation with them, from further using, disclosing, or misappropriating XY's trade secrets." (*Id.* at 30.)

---

[5] The named inventors appear on the face of the issued '100 patent. (*See* Horowitz Decl. Ex. A at 1.)

In *ABS I*, ABS and Genus ultimately stipulated to liability (Compl. ¶ 67), and XY was awarded $750,000 in actual damages "on XY's claim that ABS and Genus misappropriated XY's trade secrets." (Dkt. 790 at ¶ 18.) The jury was not asked to award punitive damages (Dkt. 700 at 2), and XY never moved for the injunction it had demanded in its pleading. ABS and Genus have now paid XY the $750,000 that the jury awarded on XY's claim for trade secret misappropriation. (Dkt. 832 at 1.)

Like its parent company, XY has returned to reassert the same old claim, this time in an attempt to get new relief. The trade secrets at issue in the new complaint are the same "XY Protocols" as before. (Compl. ¶ 65.) But XY seeks another round of actual damages for the "use" and "disclosure" of its trade secrets (*Id.* at ¶ 75), as well as the exemplary damages and injunctive relief that XY failed to pursue at trial the last time around. (*Id.* at 35.)

In the new complaint, XY (like ST) elaborates upon its prior generic allegation of "disclosure" (Dkt. 199 at ¶ 221) with specific allegations involving the '499 application. XY seeks relief under the Wisconsin law governing trade secret misappropriation as well as under a new federal statute, the Defend Trade Secrets Act, 18 U.S.C. § 1836. (Compl. ¶ 64.) XY's new complaint also differs from its pleading in *ABS I* in that XY asserts misappropriation claims not only against ABS and Genus but also against Premium Genetics. (*Id.* at ¶¶ 71, 73.) According to XY, Premium Genetics knew or was willfully blind to the fact that the '499 application "contained XY trade secret[s]" but nonetheless "allowed the '499 Application to publish on April 30, 2015" (*id.* at ¶ 67), resulting in the "destruction of XY's trade secrets" on that date. (*Id.* at ¶ 68.)

XY's own allegations, however, reveal a close relationship and identity of interests among Genus, ABS, and Premium Genetics. According to XY, Premium Genetics is a wholly-

owned subsidiary of Genus (*id.* at ¶ 6), and Genus "directs and controls certain actions of . . . Premium Genetics . . . that pertain to [XY's] allegations." (*Id.* at ¶ 9.) Moreover, Premium Genetics monitored the litigation in *ABS I*, having been "aware of ST's allegations" regarding breach of contract as well as "ABS's and Genus's stipulation" to liability for misappropriation of trade secrets. (*Id.* at ¶ 67.) Premium Genetics is now the owner of the '499 application, but ABS and Genus are responsible for having "described aspects of the GSS Technology" in that application. (*Id.* at ¶ 20.) Indeed, "[e]ach of the inventors identified in the '499 Application [is a] current or former ABS or Genus employee[]." (*Id.* at ¶ 66.) And XY further alleges that "one or more ABS employees knowingly conveyed ST's Confidential Information to Premium Genetics with the knowledge and intent that ST's Confidential Information would be published." (*Id.* at ¶ 83.)

## **ARGUMENT**

To survive a motion to dismiss for failure to state a claim, ST and XY's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Lietha v. Bank of Am., N.A.*, No. 14-cv-442, 2015 WL 1457428, at *2 (W.D. Wis. Mar. 30, 2015) (construing a motion to dismiss on preclusion grounds as a motion for judgment on the pleadings under Rule 12(c), which "is determined by the same standard applied to a motion for failure to state a claim"). ST has failed to plead a plausible breach of contract claim, and XY has failed to plead a plausible trade secret claim, because both claims are precluded as a matter of law by the judgment in *ABS I. See Wis. Pub. Serv. Corp. v. Arby Constr., Inc.*, 818 N.W.2d 863, 869 (Wis. 2012) (noting that the "question of whether claim preclusion applies under a given factual scenario is a question of law"). Both ST's contract claim and XY's trade secret claims should therefore be dismissed. *See Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589 (7th Cir. 1986)

(affirming dismissal on preclusion grounds); *Lietha*, 2015 WL 1457428 (dismissing claim on preclusion grounds).

XY's claim under the Defend Trade Secrets Act fails for the additional reason that it is based on an unauthorized disclosure of a trade secret before the effective date of the Act. And if XY's claims against Premium Genetics were not precluded for the foregoing reasons, they still could not proceed in this Court because Premium Genetics is not subject to personal jurisdiction here.

## I.     ST'S BREACH OF CONTRACT CLAIM IS PRECLUDED BY THIS COURT'S PRIOR JUDGMENT ON THE SAME CLAIM.

The preclusive effect of this Court's judgment in *ABS I* is governed by federal common law. *See Adams v. City of Indianapolis*, 742 F.3d 720, 735–36 (7th Cir. 2014). Under federal common law, where a federal court enters judgment on a state-law claim, federal courts will usually adopt, as the "federally prescribed rule of decision, the law that would be applied by state courts in the State" in which the federal court sits. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001); *see also CFE Grp., LLC v. FirstMerit Bank, N.A.*, 809 F.3d 346, 351 (7th Cir. 2015). *Semtek* involved claims resolved by a federal court sitting in diversity, but its logic extends to state-claims within a federal court's supplemental jurisdiction as well.[6] Wisconsin law should therefore govern the preclusive effect of the state-law claims resolved by *ABS I*. But the choice of law makes no difference: "Wisconsin's interpretation of res judicata is

---

[6] *Semtek* reasoned that there is "no need for a uniform federal rule" governing the preclusive effect of judgments on state-law claims, and adopting state law as the federal rule of decision avoids "forum-shopping" and "inequitable administration of the laws." 531 U.S. at 508–09. Lower courts are divided on *Semtek*'s application to state-law claims brought under a federal court's supplemental jurisdiction, *see Twersky v. Yeshiva Univ.*, 112 F. Supp. 3d 173, 179 (S.D.N.Y. 2015) (noting uncertainty), and the Seventh Circuit has not squarely addressed the issue. *But see In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 333 F.3d 763, 767–68 (7th Cir. 2003) (applying federal law of preclusion where prior judgment involved both federal and state-law claims, based largely on policy considerations in class certification context), *abrogated on other grounds by Smith v. Bayer Corp.*, 131 S. Ct. 2368 (2011).

virtually identical" to the federal approach.  *Leaf v. Supreme Court*, 979 F.2d 589, 600 (7th Cir. 1992).

Claim preclusion makes a final judgment "conclusive in all subsequent actions between the same parties or their privies as to all matters which were litigated or which might have been litigated in the former proceedings."  *Menard, Inc. v. Liteway Lighting Prods.*, 698 N.W.2d 738, 745 (Wis. 2005) (internal brackets and emphasis removed).  The doctrine is designed to "promote judicial economy and to conserve the resources the parties would expend in repeated and needless litigation of issues that were, or that might have been resolved in a single prior action."  *Hanlon v. Town of Milton*, 612 N.W.2d 44, 48–49 (Wis. 2000) (internal quotation marks omitted); *see also Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2011) ("Res judicata promotes predictability in the judicial process, preserves the limited resources of the judiciary, and protects litigants from the expense and disruption of being haled into court repeatedly.").

Under both Wisconsin and federal law, claim preclusion has three elements:  "(1) an identity between the parties or their privies in the prior and present suits; (2) an identity between the causes of action in the two suits; and, (3) a final judgment on the merits in a court of competent jurisdiction."  *Menard*, 698 N.W.2d at 745; *accord Adams*, 742 F.3d at 735–36.  ST's breach of contract claim here meets all three elements.  It involves the same parties and the same cause of action as in *ABS I*, which resulted in a final judgment on the merits.

### A.    ST's Breach of Contract Claim Involves the Same Parties as in *ABS I*.

In *ABS I*, ST asserted a breach of contract claim against ABS.  (Dkt. 302 at ¶ 223.)  In its new complaint, ST once again asserts a breach of contract of claim against ABS.  (Compl. ¶ 81.) The parties involved in the alleged breach of contract—ABS and ST—are identical.

9

**B.      ST's Contract Claim Involves the Same Cause of Action as in *ABS I*.**

Both the Supreme Court of Wisconsin and the Seventh Circuit follow the "transactional approach" to determine whether two suits involve the same claim.  *N. States Power Co. v. Bugher*, 525 N.W.2d 723, 728–29 (Wis. 1995); *Car Carriers*, 789 F.2d at 593–94.  The transactional approach "views claims under a pragmatic standard that focuses on whether the two causes of action arise out of the same common set of material facts."  *Menard*, 698 N.W.2d at 746–47.  If the same facts "form[] the foundation of both lawsuits," *id.* at 749, or "if the same set of facts is essential to both claims," *Jones v. Int'l Ass'n of Bridge Structural Ornamental & Reinforcing Iron Workers*, 864 F. Supp. 2d 760, 771 (E.D. Wis. 2012), then the two suits arise out of the same transaction or "series of connected events," and the judgment on the earlier claim precludes the later one.  *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 458 (7th Cir. 2017) (per curiam).

The transactional test is met here because the same set of facts is essential to both of ST's breach of contract claims.  *Cf. Mgmt. Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, No. 98-1042, 1999 WL 23212, at *3 (Wis. App. Jan. 21, 1999) (holding that two cases involved same claim for preclusion purposes where both "deal[t] with breaches of the same contract in the same manner").  In this case as in *ABS I*, ST has alleged that ABS breached the parties' 2012 contract by improperly using and disclosing ST's confidential information.  And in this case as in *ABS I*, the foundation of the breach claim is the same confidential information—XY's sorting protocols—taken by the same former XY employee, Kathy Mean.  Although the specific disclosure involving the '499 application (described in ST's new complaint) was not a focus of ST's pleading in *ABS I*, the general allegations in *ABS I* encompassed that disclosure:  the factual allegation at the core of ST's breach of contract claim in *ABS I* was that ABS had "improperly

disclosed and/or used Inguran's confidential information and trade secrets in its laser-based sex-sorting technologies and other sex-sorting technologies."  (Dkt. 302 at ¶ 223.)

Moreover, the patent application at issue had already published nine months before ST's operative pleading in *ABS I*.  Likewise, before filing that pleading, ST had already learned that Ms. Mean provided media protocols to senior ABS researchers for use in a patent application. (*Compare* Dkt. 302 (ST's Feb. 5, 2016 Amended Counterclaims), *with* Dkt. 308 at 98:20–100:14 (Aug. 20, 2015 Deposition of K. Mean).)

And while ST did not present evidence at trial regarding any use or disclosure of its sorting protocols in a patent application, it would have been free to do so.  For its part, the jury could have awarded relief based upon the patent application, as Court's instructions permitted the jury to find that ABS had "failed to comply" with the 2012 Agreement by "disclosing ST's . . . media protocols."  (Dkt. 692 at 29.)  Under the transactional approach to claim preclusion, the complaint thus alleges the same breach of contract cause of action that was resolved by *ABS I*.  *See Kruckenberg v. Harvey*, 694 N.W.2d 879, 886 (Wis. 2005) (explaining that the "transactional approach to claim preclusion reflects the expectation that parties who are given the capacity to present their entire controversies shall in fact do so" (internal quotation marks omitted)); *Car Carriers*, 789 F.2d at 593–94 (explaining that res judicata should be "defined with sufficient breadth to encourage parties to present all their related claims at one time").

*Cisco Systems, Inc. v. Alcatel USA, Inc.*, 301 F. Supp. 2d 599 (E.D. Tex. 2004), is particularly instructive.  There, in an earlier litigation between the parties, Alcatel had filed a complaint generically alleging misappropriation of "confidential trade secret information and other properties."  *Id.* at 604 (emphasis omitted).  After that claim was dismissed on the merits,

11

Alcatel sought to pursue in *Cisco* what Alcatel regarded as a new claim based on "specific theft" of "source code" and "theft of specific documents," *id.* (emphasis omitted), which Alcatel did not discover until after the prior litigation. *Id.* at 604 n.6. The *Cisco* court, however, dismissed the "new" claim on preclusion grounds, holding that the action was "predicated on the same nucleus of operative facts presented" in the prior case, and was therefore the "same claim" under the "transactional test." *Id.* at 604. ST's breach of contract claim fails for the same reasons.

It makes no difference that ST seeks relief in its new complaint that it did not obtain before, or that ST would like to present additional evidence at the second trial. *See Menard*, 698 N.W.2d at 746-47 ("Under the transactional analysis, it is irrelevant that the legal theories, remedies sought, and evidence used may be different between the first and second actions." (internal quotation marks omitted)); *see also Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010) ("You cannot maintain a suit, arising from the same transaction or events underlying a previous suit, simply by a change of legal theory."). For example, if ST had wanted an injunction "against ABS's further use, disclosure, or dissemination of ST's Confidential Information . . . including but not limited to, further use of any protocols or instruments incorporating or derived from ST's Confidential Information" (Compl. at 33), it could have asked for it in *ABS I*. Indeed, ST's request for an injunction that would bar ABS from *using* technologies "derived from ST's Confidential Information"—which, in ST's view, includes the ABS's GSS Technology that was at the center of *ABS I* (*id.* at ¶ 21)—only lays bare ST's hope to get new relief on its old claim.

It also makes no difference when ST "learned" about the disclosure of protocols in the '499 application. (*Id.* at ¶ 23.) A final judgment bars claims arising from the same transaction or series of transactions, regardless of whether they were known or merely discoverable at the time of the earlier litigation. *See Zientek v. Smith*, No. 95-1498, 1996 WL 397183, at *3 (Wis. App.

July 17, 1996) ("Because the basis for the Smiths' claim to the property was discoverable in the first action and could have been the subject of further investigation, we conclude that the issue could have been fully litigated in that case."); *see also Cisco*, 301 F. Supp. 2d at 604 & n.6. This specific rule reflects the general principle that claim preclusion applies to all issues that "*could have been raised*" in the prior case. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) (emphasis added). There is no exception to preclusion for "claims based on prejudgment facts which were unknown to the plaintiffs." *Car Carriers*, 789 F.2d at 596; *see also id.* ("We find this contention to be absolutely without merit."). Here, however, the prejudgment facts were known.

### C. *ABS I* Was Resolved by a Final Judgment on the Merits.

*ABS I* resolved ST's breach of contract claim in an amended final judgment entered under Rule 54(b) on April 24, 2017. (Dkt. 790 at ¶ 17.) The judgment did not resolve all claims from *ABS I*—XY's patent infringement claims remain stayed (*id.* at 5)—but a Rule 54(b) judgment is a "final judgment" as to the claims it addresses. Fed. R. Civ. P. 54(b). That is sufficient for preclusion purposes. *See, e.g.*, 18A Wright & Miller, *Federal Practice & Procedure* § 4432 (2d ed. 2017) ("When properly entered, [Rule 54(b)] judgments are final for purposes of preclusion . . . ."); *Alexander v. Chicago Park Dist.*, 773 F.2d 850, 855 (7th Cir. 1985) (holding that a Rule 54(b) judgment, even in the absence of technical compliance with Rule 54(b) itself, "was sufficiently final for res judicata purposes"). ABS and ST have each filed a notice of appeal in *ABS I*, but "the fact that an appeal was lodged does not defeat the finality of the judgment." *Ross ex rel. Ross v. Bd. of Educ.*, 486 F.3d 279, 284 (7th Cir. 2007)

\*     \*     \*

13

ST's new complaint asserts the same breach of contract cause of action involving the same parties as in *ABS I*.  The breach claim is therefore precluded by the final judgment in *ABS I* and should be dismissed.

## II.   XY'S CLAIMS FOR MISAPPROPRIATION OF TRADE SECRETS SHOULD ALSO BE DISMISSED.

Like ST, XY has reprised a claim regarding Kathy Mean and the XY sorting protocols that was part of the same transaction at issue in *ABS I*.  XY's trade secret claims are precluded for the same reasons that ST's breach of contract claims are precluded, and XY's decision to cite a new statute and identify a new Genus subsidiary involved in the asserted misappropriation cannot save them from dismissal.

Even if it were not precluded, XY's claim under the federal Defend Trade Secrets Act would fail as a matter of law because the asserted "destruction of XY's trade secrets through publication" occurred on April 30, 2015 (Compl. ¶¶ 68, 75), more than a year before the effective date of the Act.

### A.   XY's Trade Secret Claims Are Precluded by a Prior Judgment on the Same Cause of Action.

The preclusion analysis for XY's trade secret claims is largely the same as the analysis above for ST's breach of contract claim.

#### 1.   *Final Judgment*

XY's trade secret claim in *ABS I* was resolved by the same final judgment as ST's breach of contract claim.  (Dkt. 790 at ¶ 18.)

#### 2.   *Same Cause of Action*

In *ABS I*, XY asserted a trade secret misappropriation claim based on the "disclosure and use of XY's confidential trade secret information."  (Dkt. 199 at ¶ 221.)  The trade secrets at issue were "XY's protocols for the sexing and freezing of . . . sperm" obtained "through targeted

14

hiring of former XY employees." (*Id.* at ¶¶ 218–19.) XY alleged damages for both "use" and "disclosure" of its trade secrets (*id.* at ¶ 221), and its pleading requested an injunction that would bar ABS, Genus, and "all those in active concert or participation with them" from any further use or disclosure of XY's trade secrets. (*Id.* at 30.)

Like ST, XY alleged an improper disclosure in both *ABS I* and this case, but its complaint here takes XY's previously generic allegations and makes them more specific. The trade secrets are the same as before, but XY now describes a specific disclosure involving the publication of the '499 patent application. (Compl. ¶ 67.) As with ST, this greater specificity is immaterial: XY has still asserted the same claim under the transactional approach to claim preclusion. XY's newly-specific claim is squarely within the generic allegations of *ABS I*; the foundational facts— what the asserted trade secrets are and how they came to be misappropriated—are the same; and XY could have pursued the allegations from its new complaint in the prior case. Indeed, the publication that resulted in the "destruction" of XY's trade secrets occurred seven months before XY had even filed the pleading which first asserted its trade secret claim in *ABS I*, and Kathy Mean had testified about providing protocols for use in a patent application before the pleading was filed. (*Compare* Dkt. 199 (XY's Dec. 9, 2015 Counterclaims), *with* Dkt. 308 at 98:20– 100:14 (Aug. 20, 2015 K. Mean Dep.).)

XY apparently would now like to obtain the additional relief it declined to pursue in *ABS I*—including punitive damages and an injunction—but XY's request for that relief cannot revive its old claim. ABS and Genus have paid the damages the jury determined were appropriate in *ABS I* (Dkt. 832), and res judicata "is a doctrine of repose." *Alexander*, 773 F.2d at 853. The parties should not be subjected to another round of litigation over the same cause of action. *See Menard*, 698 N.W.2d at 746-47 ("Under the transactional analysis, it is irrelevant that the . . .

remedies sought . . . may be different between the first and second actions." (internal quotation marks omitted)).

XY's citation to a new source of law (the federal Defend Trade Secrets Act) does not create a new cause of action under the transactional test, which looks to the operative facts rather than legal theories.  *See Menard*, 698 N.W.2d at 746-47; *Carr*, 591 F.3d at 913; *Czarniecki v. City of Chicago*, 633 F.3d 545, 550 (7th Cir. 2011) (rejecting proposed exception to preclusion where "facts needed" are "a little different":  "That approach would thoroughly undermine claim preclusion and would allow endless litigation as long as a lawyer could identify a slightly different cause of action with one element different from those in the first, second, or third lawsuits . . . .").  Indeed, because "plaintiffs in federal courts are not required to plead legal theories," *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010), XY was free to request a jury instruction based on the Act in *ABS I*, just as it was free to introduce evidence that its trade secrets were destroyed by the April 30, 2015 publication of the '499 application, which was on ABS's trial exhibit list.  (Dkt. 490 at 40 (PX 415).)  Of course, as explained further below, XY's federal trade secret claim would have failed on the merits because the Act is not retroactive, but that is beside the point.  Preclusion extends equally to claims with merit and those without.

Thus, like ST's contract claim, XY's trade secret claims arise from the same transaction that was resolved on the merits by the judgment in *ABS I*.

### 3.      *Same Parties or Their Privies*

XY's new complaint asserts that three entities are liable for trade secret misappropriation: Genus, ABS, and Premium Genetics.  (Compl. ¶¶ 71, 73.)  Genus and ABS were both parties to *ABS I*, and this Court entered judgment on XY's trade secret claim against both of them.  (Dkt. 790 at ¶ 18.)  Thus, the same "parties or their privies" requirement of claim preclusion is plainly

16

met for XY's claims against them.  *Menard*, 698 N.W.2d at 745; *accord Adams*, 742 F.3d at 735–36.  The only question is whether Premium Genetics, which was not a party to *ABS I*, can invoke preclusion as a "privy" to ABS or Genus.  The answer is "yes."  XY's own complaint confirms that Premium Genetics has just the kind of close relationship with both ABS and Genus—both in general and in connection with XY's claims in particular—that would entitle Premium Genetics to rely on the preclusive effect of the judgment in *ABS I*.

Party *A* is in privity with party *B* for purposes of res judicata if the two parties have "a sufficiently close identity of interests to justify application of nonparty claim preclusion."  *Nat'l Spiritual Assembly of Bahá'ís Under Hereditary Guardianship, Inc. v. Nat'l Spiritual Assembly of Bahá'ís, Inc.*, 628 F.3d 837, 849 (7th Cir. 2010) (internal quotation marks omitted); *State ex rel. Barksdale v. Litscher*, 685 N.W.2d 801, 806 (Wis. App. 2004) ("Privity compares the interests of a party to a first action with a nonparty to determine whether the first action protected the interests of the nonparty.").

As an initial matter, the close corporate relationship among the parties strongly supports the conclusion that Premium Genetics is in privity with both Genus and ABS—though privity with either would suffice.  Premium Genetics is a wholly-owned subsidiary of Genus (Compl. ¶ 6), as is ABS (*id.* at ¶ 5).  Moreover, XY specifically alleges that Genus "directs and controls certain actions of ABS and Premium Genetics . . . that pertain to the allegations in this Complaint."  (*Id.* at ¶ 9.)  Genus's ownership and direction of relevant actions of Premium Genetics justifies finding that the two are in privity with one another for purposes of XY's trade secret claims.  *See Manu-Tronics, Inc. v. Effective Management Systems-Wisconsin, Inc.*, 471 N.W.2d 263, 267 (Wis. App. 1991) (finding privity between a "closely-held corporation" and its "principal shareholder"); *Anchor Glass Container Corp. v. Buschmeier*, 426 F.3d 872, 880 (7th

Cir. 2005) (finding privity between parent and subsidiary); *FleetBoston Fin. Corp. v. Alt*, 638 F.3d 70, 81 n.12 (1st Cir. 2011) (same); *Lubrizol* 929 F.2d at 966 (same); *Salessi v. Commonwealth Land Title Ins. Co.*, No. 08-cv-1274, 2013 WL 5676209, at *9 (C.D. Cal. Oct. 16, 2013) (same); *JSC Sec., Inc. v. Gebbia*, 4 F. Supp. 2d 243, 251 (S.D.N.Y. 1998) (same). Likewise, the fact that ABS and Premium Genetics are both wholly-owned subsidiaries of Genus whose relevant actions were under Genus's direction and control is sufficient to justify a finding of privity between ABS and Premium Genetics.  *See Dunlap*, 2017 WL 1960399, at *1 ("we find that two companies, both wholly owned subsidiaries of the same company, are in privity with one another").

But Premium Genetics need not rely on corporate relationships alone, for XY's complaint alleges a number of specific and important ties among Premium Genetics, ABS, and Genus that further reveal that these defendants' interests are aligned for purposes of XY's claims.  For example, although Premium Genetics owns the '499 application, all of the inventors of the claimed inventions are "current or former ABS or Genus employees."  (Compl. ¶ 66.)  And notwithstanding the fact that Premium Genetics was nominally responsible for filing the application, XY alleges that "*ABS and Genus* described aspects of the GSS Technology" in the application.  (*Id.* at ¶ 20 (emphasis added).)  XY also alleges that ABS intended for Premium Genetics to file the application (*id.* at ¶ 83), and that ABS "allowed the patent office to publish" it.  (*Id.* at ¶ 84.)  The complaint even says that ABS is poised to "file further patent applications . . . that include the same disclosure as the '499 Application."  (*Id.* at ¶ 67.)  On XY's view, Premium Genetics may be the nominal patent owner, but ABS and Genus are pulling the strings.  *See Supporters to Oppose Pollution, Inc. v. Heritage Grp.*, 973 F.2d 1320, 1325 (7th

Cir. 1992) ("StOP's whole theory is that Heritage is a privy of EWC—that it was indeed pulling the strings.").

Equally telling, XY has alleged that Premium Genetics was closely following developments in *ABS I*.  According to XY, Premium Genetics "was aware of ST's allegations" relating to breach of contract and of "ABS's and Genus's stipulation" in *ABS I*, and Premium Genetics was in a position to conduct an "investigation" involving "ABS or some or all of the inventors of the '499 Application."  (Compl. ¶ 67.)  What is more, if XY had sought and obtained the injunction it requested in its pleading in *ABS I*, Premium Genetics would have been bound by it.  (Dkt. 199 at 30 (requesting injunction barring ABS, Genus, and "all those in active concert or participation with them, from further using, disclosing, or misappropriating XY's trade secrets").)  On XY's own account, Premium Genetics was monitoring *ABS I* and had every reason to want Genus and ABS to prevail so that Premium Genetics could avoid an injunction that would have stopped it from filing further patent applications like the '499 application.  *See Parungao*, 858 F.3d at 459 (holding that plaintiff had "pleaded himself out of court on the issue of privity" by "characteriz[ing] the legal interests" of the parties asserting privity "as aligned"); *Fantasy Inc. v. La Face Records*, No. 96-cv-4384, 1998 WL 916481, at *6 (E.D. Cal. Nov. 12, 1998) (concluding that plaintiff's own allegations demonstrated that the parties claiming privity were "closely related to each other for purposes of the transactions underlying this case").  XY's own allegations thus show that Premium Genetics not only has a close relationship to ABS and Genus but also had a common interest in the outcome of *ABS I*.  *See, e.g.*, *Barksdale*, 685 N.W.2d at 806 (noting that privity "compares the interests of a party to a first action with a nonparty").

The concept of privity has "expanded over time," *Nat'l Spiritual Assembly*, 628 F.3d at 849, and a "lesser degree of privity is required for a new defendant to benefit from claim preclusion," as Premium Genetics seeks to do here, "than for a plaintiff to bind a new defendant in a later action." *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 966 (3d Cir. 1991); *see also Dunlap v. Cottman Transmissions Sys., LLC*, No. 16-2318, 2017 WL 1960399, at *1 (4th Cir. May 11, 2017) (applying the same principle); *Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 619 (Fed. Cir. 1995) (same).  But Premium Genetics is in privity with ABS and Genus whether a relaxed standard applies or not.

*     *     *

Because the trade secret claims in XY's new complaint constitute the same cause of action involving the same parties or their privies as was resolved by the judgment in *ABS I*, XY's trade secret claims are precluded.

### B.    If XY's Claim Under the Defend Trade Secrets Act Were Not Precluded, It Would Fail As a Matter of Law.

As discussed above, XY claims that Premium Genetics is liable for misappropriation under both Wisconsin law and the federal Defend Trade Secrets Act, 18 U.S.C. § 1836.  (Compl. ¶ 64.)  In connection with both claims, XY has alleged that the publication of the '499 application, which occurred on April 30, 2015 (*id.* at ¶ 66), resulted in the "destruction of XY's trade secrets."  (*Id.* at ¶ 68.)  Taking those allegations as true, XY has pleaded itself out of court with respect to its Defend Trade Secrets Act claim.  The Act was enacted on May 11, 2016, and it is not retroactive.  *See* Defend Trade Secrets Act § 2(e), Pub. L. No. 114-153 (May 11, 2016) (providing that the Act "shall apply with respect to any misappropriation of a trade secret . . . for which any act occurs on or after the date of the enactment of this Act").  Once Premium Genetics had (in XY's view) destroyed the relevant trade secrets in 2015, there were no further acts of

20

misappropriation that could occur after the effective date of the Act.  XY pleads none.  To the contrary, XY mentions the issuance in 2017 of the '100 patent (from the '499 application), but XY does not contend that such issuance was an improper disclosure of any portion of its trade secret protocols.  (Compl. ¶ 68.)  And with good reason:  XY's position is that the information was no longer secret, having been made public two years earlier.

> **C.**     **If XY's Claim Under the Defend Trade Secrets Act Is Dismissed, the Court Should Decline to Exercise Jurisdiction Over XY's State-Law Claim Against Premium Genetics.**

If XY's federal trade secret claim against Premium Genetics is dismissed because the Act is not retroactive, then even if XY's state-law trade secret claim were not precluded, this Court should decline to exercise supplemental jurisdiction over that claim.  This lawsuit is primarily a patent case against ABS and Genus, and the state-law trade secret claim against Premium Genetics is not "so related" to the patent claims that "they form part of the same case or controversy."  28 U.S.C. § 1367(a).  A foreign company should not have to defend against state-law claims arising from Virginia-based conduct in a patent infringement suit in Wisconsin.  *See id.* § 1367(c)(4) (permitting district court to "decline to exercise supplemental jurisdiction" when there are "compelling reasons" for doing so).  As between XY and Premium Genetics, the dismissal of XY's claim under the Act would leave only state-law issues to be resolved in this Court.  *Cf. United Mine Workers v. Gibbs*, 383 U.S. 725, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

**III.     IF XY'S CLAIMS AGAINST PREMIUM GENETICS WERE NOT PRECLUDED, THEY WOULD STILL BE SUBJECT TO DISMISSAL BECAUSE THE COURT HAS NO PERSONAL JURISDICTION OVER PREMIUM GENETICS.**

Even if the claims against Premium Genetics were not precluded as a matter of law, they should still be dismissed because Premium Genetics is not subject to personal jurisdiction in this Court.  Premium Genetics has no employees in Wisconsin, and the person working on behalf of

Premium Genetics who filed the '499 application did so from Reston, Virginia. (Declaration of Jonathan Lightner, Ph.D. ("Lightner Decl.") ¶¶ 4–5.[7])

As the party invoking the jurisdiction of this Court, XY "bears the burden of demonstrating personal jurisdiction" over Premium Genetics. *Cent. States v. Reimer Express World Corp.*, 230 F.3d 934, 939 (7th Cir. 2000). And here, XY cannot meet its burden. Premium Genetics is not subject to general jurisdiction in Wisconsin, and it is not subject to specific jurisdiction in connection with XY's claims either.

The Supreme Court has "differentiated between general or all-purpose jurisdiction, and specific or case-linked jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011). General jurisdiction permits a court to hear "any and all claims" against a party, but such jurisdiction exists only where a defendant's "affiliations with the State are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Id.* General jurisdiction over a corporate defendant is usually available *only* in the corporation's formal place of incorporation or principal place of business. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 761 n.19 (2014); *id.* at 760 (describing these as "paradigm all-purpose forums").

The new *Daimler* framework "severely narrow[s] the scope of general jurisdiction," *Allstate Ins. Co. v. Electrolux Home Prods., Inc.*, No. 1:14-cv-329, 2014 WL 3615382, at *4 (N.D. Ohio July 18, 2014), and provides no possible basis for general jurisdiction over Premium Genetics in this Court. According to XY's own complaint, Premium Genetics "is a corporation organized under the law of the United Kingdom with a principal place of business in Nantwich in the United Kingdom." (Compl. ¶ 6.) XY does not allege any exceptional circumstance that would justify the exercise of general jurisdiction here.

---

[7] In addressing a motion to dismiss for lack of personal jurisdiction, the Court "may receive and weigh affidavits." *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983).

Additionally, there is no basis for the assertion of specific jurisdiction over Premium Genetics either.  Specific jurisdiction focuses on the "relations among the defendant, the forum, and the litigation."  *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014).  Specifically, "the defendant's suit-related conduct must create a substantial connection with the forum State."  *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014).

XY has not alleged, and Premium Genetics did not itself engage in, any Wisconsin-based conduct giving rise to XY's trade secret claims.  Premium Genetics owns no property and has no employees in Wisconsin.  (Lightner Decl. ¶ 4.)  XY's trade secret claims are based on only one substantive action on Premium Genetics's part:  the filing of the '499 patent application.  (Compl. ¶ 66 ("Premium Genetics, Genus's wholly owned subsidiary, misappropriated XY's trade secrets by disclosing them to the public in a United States patent application.").)  But that conduct did not occur in Wisconsin.  An outside attorney based in Virginia filed the '499 application on behalf of Premium Genetics.  (Lightner Decl. ¶ 5.)  That Virginia-based attorney was responsible for prosecuting the '499 application from its filing through its publication on April 30, 2015 (*id.* at ¶ 6), and she would have been responsible for asking the patent office to "withhold the application from publication" or asking that it be "withdrawn . . . before publication."  (Compl. ¶ 67.)

Premium Genetics, through its attorney, engaged in conduct in Virginia that (according to XY) caused injury to XY in Texas.  (*Id.* at ¶ 2.)  But Premium Genetics does not have a sufficient connection to Wisconsin to become subject to personal jurisdiction here.

## <u>CONCLUSION</u>

The Court should dismiss ST's breach of contract claim against ABS for failure to state a claim.  The Court should also dismiss XY's trade secret claims against ABS, Genus, and Premium Genetics for failure to state a claim.  If the trade secret claims against Premium

Genetics are not dismissed for failure to state a claim, they should be dismissed for lack of personal jurisdiction.

Dated: August 11, 2017                                 Respectfully submitted,


  */s/ Michael J. Modl*
Michael J. Modl
**AXLEY BRYNELSON, LLP**
Manchester Place, Suite 200
2 E. Mifflin Street
Madison, Wisconsin 53703
Telephone:  (608) 257-5661
mmodl@axley.com

Thomas D. Rein
William H. Baumgartner, Jr.
Lisa A. Schneider
Steven J. Horowitz
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, Illinois 60603
Telephone:  (312) 853-7000
trein@sidley.com
wbaumgartner@sidley.com
lschneider@sidley.com
shorowitz@sidley.com

Paul J. Zegger
**SIDLEY AUSTIN LLP**
1501 K Street, N.W.
Washington, DC 20005
Telephone:  (202) 736-8000
pzegger@sidley.com

*Counsel for Defendants ABS Global, Inc.,*
*Genus plc, and Premium Genetics (UK) Ltd.*

24