IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
───────────────────────────────────────────────────────────────────────

INGURAN, LLC d/b/a STGENETICS, XY, LLC, and
CYTONOME/ST, LLC,

                    Plaintiffs,                  OPINION AND ORDER

    v.

                                                        17-cv-446-wmc

ABS GLOBAL, INC., GENUS PLC, and
PREMIUM GENETICS (UK) LTD,

                      Defendants.
───────────────────────────────────────────────────────────────────────

Defendant ABS Global, Inc. ("ABS") is one of just a few, large "bull studs" that sell "straws" of bull semen for use in artificial insemination. Inguran, LLC ("ST") provides semen-processing services ("sorting") to ABS and other bull studs to create "sexed semen straws," which consist primarily of either male or female sperm cells. Successful semen sorting is a relatively new breeding technology with substantial economic value for beef producers, who prefer male calves, and dairy farmers, who prefer female calves.

In this lawsuit, plaintiffs ST, XY, LLC ("XY"), and Cytonome/ST, LLC ("Cytonome") bring claims for patent infringement, breach of contract, and misappropriation of trade secrets under both the Defend Trade Secrets Act and state law. Among other things, plaintiffs seek injunctive relief against defendants ABS, Genus plc ("Genus"), and Premium Genetics (UK) LTD ("Premium Genetics"). Before the court is defendants' motion to dismiss plaintiffs' claims for breach of contract and misappropriation of trade secrets (dkt. #33), which will be denied without prejudice.

FACTS[1]

A. *ABS I*

ABS and ST entered their first sorting contract in 2006 and later reached another agreement in 2012. In an earlier lawsuit before this court involving the same parties, ABS alleged that ST engaged in monopolistic practices in the sorting market. *See ABS Global, Inc. v. Inguran, LLC d/b/a Sexing Technologies*, No. 14-cv-503 (W.D. Wis.) ("*ABS I*"). Specifically, ABS argued that ST maintained a monopoly by forcing the inclusion of anticompetitive terms in their contracts with bull studs, including the 2012 agreement between ABS and ST, as well as acquiring patents for the purpose of excluding others from the sex-sorting market. ST asserted counterclaims against ABS and its parent company, Genus. Finally, ST's subsidiary, XY, intervened and asserted its own counterclaims.

On August 1, 2016, *ABS I* proceeded to a jury trial, which turned in part on evidence that a former XY employee, Kathy Mean, brought confidential XY sorting protocols to ABS when she began work there. ST and XY alleged that Mean's disclosure breached the confidentiality provisions of their 2012 Agreement with ABS and misappropriated their trade secrets. Ultimately, ABS prevailed on its monopolization claim, while ST and XY prevailed on their claims for breach of contract and misappropriation of trade secrets.

---

[1] In evaluating a motion to dismiss, the court will accept all well-pleaded factual allegations as true when viewed in a light most favorable to the non-moving party. *See, e.g., Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016). In addition, the court may "take judicial notice of matters of public record without converting a motion for failure to state a claim into a motion for summary judgment." *See, e.g., Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997).

## B. The Present Lawsuit

The present lawsuit was filed more than three years after *ABS I* was filed. This time, ST, XY, and Cytonome brought suit against ABS, Genus, and Premium Genetics for patent infringement, misappropriation of trade secrets under the Defend Trade Secrets Act and state law, and breach of the confidentiality provisions of the 2012 agreement between ST and ABS.[2] As the remedies for these alleged wrongs, plaintiffs ST, XY and Cytonome seek various forms of monetary relief; Cytonome seeks an injunction against ABS and Genus's use of its patents; XY seeks an injunction against Premium Genetics' use of XY's trade secrets; and ST seeks an injunction against ABS's use or disclosure of ST's confidential information. In addition to disputing plaintiffs' claims, defendants assert counterclaims for breach of contract (alleging quality problems with various straws received) and seek a litany of declaratory judgments related to plaintiffs' patent infringement claims.[3]

The crux of ST's breach of contract claim is its allegation that ABS breached the confidentiality provision of the 2012 Agreement by improperly disclosing information wrongfully taken by Kathy Mean to Premium Genetics, which then incorporated that information into a patent application. (Compl. (dkt. #1) ¶¶ 80-81.) ST further alleges that both ABS and Premium Genetics are legally responsible for "allow[ing] the patent office to publish" the specific application (*id*. at ¶¶ 66, 84), which "diminished or eliminated the economic value of the portions of ST's Confidential Information that were

---

[2] Neither Cytonome, an ST-affiliated LLC, nor Premium Genetics, a wholly-owned subsidiary of Genus, were parties to the *ABS I* litigation.

[3] These claims are in addition to defendants' now-dismissed first and second counterclaims against ST for antitrust violations and unfair competition.

disclosed." (*Id*. at ¶ 86.) The application at issue is U.S. Patent Application No. 14/308,499 ("the '499 application"), which was filed on June 18, 2014, and subsequently published on April 30, 2015. (*Id*. at ¶ 66). The *ABS I* trial did not take place until July 2016, more than a year after this publication.

OPINION

In its motion to dismiss, defendants ABS and Genus argue that XY's claims for misappropriation of trade secrets and ST's claim for breach of contract are precluded by the judgment in *ABS I,* as the facts alleged could have been raised in that lawsuit. Defendants also argue that Premium Genetics, as a party in privity with Genus and ABS, should benefit from this same claim preclusion. Alternatively, Premium Genetics argues that it is not subject to the personal jurisdiction of this court.

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). To make this determination, the court must "constru[e] the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [the plaintiff's] favor." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). This standard applies to determinations of whether a claim is precluded by a prior judgment as well. *See, e.g.*, *Lietha v. Bank of Am., N.A.*, No. 14-cv-442, 2015 WL 1457428, at *2 (W.D. Wis. Mar. 30, 2015) (construing a motion to dismiss on preclusion grounds as a motion for judgment on the pleadings under Rule 12(c), which "is determined by the same standard applied to a motion for failure to state a claim").

4

I. **Claim Preclusion**

The preclusive effect of this court's judgment on the state law claims in *ABS I* is governed by federal common law, which adopts as the "federally prescribed rule of decision, the law that would be applied by state courts in the State" in which the federal court sits. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001). In this case, "Wisconsin's interpretation of res judicata, which is virtually identical" to the federal approach. *Leaf v. Supreme Court of State of Wis.*, 979 F.2d 589, 600 (7th Cir. 1992).

Under Wisconsin and federal law, claim preclusion has three elements: "(1) an identity between the parties or their privies in the prior and present suits; (2) an identity between the causes of action in the two suits; and, (3) a final judgment on the merits in a court of competent jurisdiction." *Menard, Inc. v. Liteway Lighting Prod.*, 2005 WI 98, ¶ 26, 282 Wis. 2d 582, 596, 698 N.W.2d 738, 745 (2005); *accord Adams v. City of Indianapolis*, 742 F.3d 720, 735-36 (7th Cir. 2014). Claim preclusion renders a final judgment "conclusive in all subsequent actions between the same parties or their privies as to all matters which were litigated or *which might have been litigated* in the former proceedings." *Menard, Inc.*, 698 N.W.2d at 745 (brackets omitted; emphasis in original).

With the exceptions of Cytonome and Premium Genetics, the preclusive effect of *ABS I* turns solely on "an identity between the causes of action in the two suits," since the parties and the court are otherwise the same. A "transactional approach" is utilized to determine whether two suits involve the same claim. *N. States Power Co. v. Bugher*, 189 Wis. 2d 541, 553, 525 N.W.2d 723, 728 (1995); *Car Carriers v. Ford Motor Co.*, 789 F.2d 589, 593-94 (7th Cir. 1986). The transactional approach "views claims under a pragmatic

5

standard that focuses on whether the two causes of action arise out of the same common set of material facts." *Menard*, 698 N.W.2d at 747. "[I]f the same set of facts is essential to both claims," *Jones v. Int'l Ass'n of Bridge Structural Ornamental & Reinforcing Iron Workers*, 864 F. Supp. 2d 760, 771 (E.D. Wis. 2012), then the two suits arise out of the same transaction or "series of connected events," and the earlier judgment has preclusive effect. *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 458 (7th Cir. 2017). So it is under this approach that the court will judge the parties' claim preclusion arguments.

### A. ST's Breach of Contract Claims

Defendants argue that ST's breach of contract claim is precluded under the transactional approach because, as in *ABS I*, ST again alleges that ABS breached the parties' 2012 contract by improperly using and disclosing ST's confidential information. And, once again, the claim turns on the confidential information about XY's sorting protocols taken by Kathy Mean. Although the present allegations concerning the '499 application were not a focus of *ABS I*, defendants argue that the claim adjudicated in *ABS I* was premised on the same allegation that ABS "improperly disclosed and/or used ST's confidential information and trade secrets in its laser-based sex-sorting technologies and other sex-sorting technologies." (Am. Answer (*ABS I* dkt. #302) at ¶ 223.)

Moreover, the '499 patent application was published nine months *before* ST's operative pleading in *ABS I*. Regardless of whether ST was aware of that publication, a final judgment bars claims under the transactional test if they were merely discoverable at the time of the earlier litigation. *See Zientek v. Smith*, 204 Wis. 2d 109, 552 N.W.2d 897 (Ct. App. 1996) ("Because the basis for the Smiths' claim to the property was discoverable

6

in the first action and could have been the subject of further investigation, we conclude that the issue could have been fully litigated in that case.") (per curiam); *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981).

In response, plaintiffs argue that the transactional test is not satisfied because ST's and XY's current claims center on the defendants' conduct in destroying the value of the protocols by publication of the '499 patent application in 2014, rather than Ms. Mean's use of the protocols in her GSS-related R&D work that occurred years earlier and was the subject of *ABS I*. On the other hand, defendants argue that the relevant transaction litigated in *ABS I* was Ms. Mean's misappropriation *and all related issues*, including the development and publication of the '499 patent. Given the breadth of the cause of action in *ABS I* and the publication date of the '499 patent application, this court agrees that the present breach of contract claim is predicated upon facts that were the proper subject of the litigation in *ABS I* under the transactional test.

This holding does not end the analysis, however, because even if the transactional test is satisfied, plaintiff notes that the concealment exception to the preclusion doctrine may be applicable due to omissions and misrepresentations by defendants during the course of the *ABS I* litigation. Under the Restatement approach, "[t]he result is the same when the defendant was not fraudulent, but by an innocent misrepresentation prevented the plaintiff from including the entire claim in the original action." Restatement (Second)

of Judgments § 26, cmt. J (1982).[4] But this court need not determine if the Restatement's approach to cases of unintentional misrepresentation is valid under Wisconsin law, as it does not yet find that concealment, intentional or innocent, has occurred. Instead, for purposes of defendants' motion to dismiss, it is enough that plaintiffs assert that ABS and Genus deliberately misled ST and XY throughout the entirety of the proceedings in *ABS I*, and in doing so, they prevented ST and XY from discovering that Premium Genetics had accessed and publicly disclosed the stolen protocols.

Specifically, although ABS acknowledged liability for Kathy Mean's use of the stolen protocols in developing GSS technology, plaintiffs maintain that ABS and Genus neither disclosed the protocols that were shared with Premium Genetics, nor that Premium Genetics then used the information in its '499 patent application. Plaintiffs argue, therefore, that defendants' numerous representations in *ABS I* that Ms. Mean's misappropriation had been remedied by ABS were misleading at best and fraudulent at worst, since it caused ST and XY to believe that compensation related only to the GSS project would be sufficient. Plaintiffs further argue that this misrepresentation had the effect of inducing them to stop investigating whether additional instances of misuse or improper disclosure had occurred.

---

[4] While this Restatement approach has not been expressly adopted by Wisconsin courts, the Wisconsin Supreme Court has recognized that "the res judicata effect of a county court order is dependent upon competent jurisdiction and an absence of fraud." *Hammes v. First Nat. Bank & Tr. Co. of Racine*, 79 Wis. 2d 355, 363, 255 N.W.2d 555, 559 (1977). Federal courts have similarly concluded that under Wisconsin law, a state court judgment has no binding effect in subsequent litigation where the plaintiff proposes to rely on evidence that he was unable or failed to present in the first action on account of the defendant's fraud or concealment." *Bell v. City of Milwaukee*, 514 F. Supp. 1363, 1368 (E.D. Wis. 1981).

Whatever merit this claim of deception might have is, however, largely answered by ABS's timely disclosure of a June 12, 2014, email from Mean to Jeff Betthauser and others at ABS, in which she provided, according to Betthauser's own deposition testimony in that case, "media protocols" for use in "a patent application." (Betthauser Dep. (*ABS I* dkt. #462) 99:5-100:17.) Moreover, the meaning of this email exchange was explored during both Betthauser and Mean's depositions. When Mean was asked about the email, she testified that Marj Faust had "request[ed] consolidated write-ups" of ABS's protocols "to prepare some patent documents." (Mean Dep. (*ABS I* dkt. #308) 100:10-14.) Indeed, ST placed this email and the published version of the '499 patent on its trial exhibit list in *ABS I* (although the patent application itself was not produced in discovery and was only added to defendants' exhibit list on June 24, 2016, just weeks before trial).

ABS and Genus were also served with an interrogatory that asked them to "explain with specificity [their] search for, location of, and who had access to, any copy of . . . [t]he XY protocols in ABS or Genus's possession, custody, or control, including the copy of the XY protocols produced by ABS in this case." (Matheson Decl. (dkt. #41-3) 2.) ABS and Genus responded that:

> The single copy of the XY protocols book that was produced by ABS in this case (ABS_00124682) was gathered as part of the document collection that was conducted in connection with this lawsuit . . . . Only this one copy of the XY protocols book was found in ABS's search, and it was contained in a file folder in a set of archive files located in a common area at ABS's Waunakee, Wisconsin facility. . . . ABS also conducted a reasonable inquiry to determine whether any current ABS employee looked at this copy of the XY protocols book or was aware that the copy was present in a file folder in the files. The company was unable to identify a current employee who looked at the XY protocols book or was aware that it was

present in the file folder.

(*Id*.) While this response makes no mention of any disclosure of the protocols to Premium Genetics or to its use in the '499 application, defendants argue that the response was complete and fair because the interrogatory only related to copies in the possession of ABS or Genus and did not ask ABS to describe everything that Ms. Mean or others had developed at ABS based on XY confidential information, or to identify every document into which information from those protocols was incorporated.

At a minimum, the additional facts and evidence cited by ST and XY create a fact issue. While claim preclusion is ultimately a legal question, here the dispute about the applicability of the concealment exception hinges on questions of fact. *See Brighton Collectibles, Inc. v. Coldwater Creek, Inc.*, 2009 WL 10671324, at *2 (S.D. Cal. Apr. 27, 2009) ("Whether res judicata operates to bar a claim is a mixed question of law and fact properly addressed in a motion brought under Rule 56(c)."); *Facchiano v. U.S. Dep't of Labor*, 859 F.2d 1163, 1168 n.4 (3d Cir. 1988) ("[I]n this case we have a mixed question of fact and law—whether the HUD cause of action and the DOL cause of action are sufficiently similar to justify claim preclusion."). Consequently, this court will permit further discovery, rather than dismiss defendants' motion with prejudice, as plaintiffs have, for now, alleged enough to raise a reasonable possibility that concealment occurred, but have not yet proven it.[5]

---

[5] Appropriately enough, plaintiffs will have an opportunity to come forward with their evidence of concealment in response to defendants' recent motion for summary judgment. (Def.'s Br. (dkt. #162) 217-48.).

## B. ST's Misappropriation of Trade Secrets Claims

Again mirroring *ABS I*, XY asserts a claim for misappropriation of trade secrets based on Kathy Mean's theft of XY sorting protocols. In *ABS I*, the misappropriation claim was based on the "disclosure and use of XY's confidential trade secret information." (Am. Answer (*ABS I* dkt. #199) at ¶ 221.) The trade secrets at issue were "XY's protocols for sexing and freezing of . . . sperm" obtained "through targeted hiring of former XY employees." (*Id*. at ¶¶ 218-19.) XY further alleged damages for both "disclosure" and "use" of its trade secrets (*id*. at ¶ 221), and sought an injunction that would bar ABS, Genus, and "all those in active concert or participation with them" from any further disclosure of XY's trade secrets. (*Id*. at 30.) Consequently, defendants argue that XY's present claim is encompassed by its previous claim in *ABS I*.

Since the publication that resulted in the "destruction" of XY's trade secrets occurred months before XY filed its pleading in *ABS I*, plaintiffs argue that the applicability of claim preclusion to the state law claims will again turn on whether concealment occurred. The court agrees. However, XY's new claim under the Defend Trade Secrets Act fails as a matter of law because the Act does not apply retroactively to Mean's misappropriation that took place before its enactment. *See* Defend Trade Secrets Act § 2(e), Pub. L. No. 114-153 (May 11, 2016) (providing that the Act "shall apply with respect to any misappropriation of a trade secret . . . for which any act occurs on or after the date of the enactment of this Act."). Since XY alleges that Premium Genetics destroyed the value of its trade secrets in 2015, no misappropriation could have occurred after the enactment of the Act in 2016.

This court will continue to exercise supplemental jurisdiction over XY's trade secret claim given the factual issues it shares with the other claims being litigated by the parties. Accordingly, as with the breach of contract claims, whether the state law misappropriation claims are precluded will turn on whether concealment occurred during the related litigation in *ABS I*.

**C. Privity and Personal Jurisdiction over Premium Genetics**

While Premium Genetics was not a party in *ABS I*, there is enough in the record to conclude that it is in privity with ABS and Premium Genetics because it is a wholly-owned subsidiary of Genus and their interests overlap. *See State ex rel. Barksdale v. Litscher*, 2004 WI App 130, ¶ 14, 275 Wis. 2d 493, 504, 685 N.W.2d 801, 806 ("Privity compares the interests of a party to a first action with a nonparty to determine whether the first action protected the interests of the nonparty."); *Anchor Glass Container Corp. v. Buschmeier*, 426 F.3d 872, 880 (7th Cir. 2005) (finding privity between parent and subsidiary). Indeed, the injunction requested by XY in *ABS I* would have likely applied to Premium Genetics as a party "in active concert" with ABS and Genus. This same privity appears to apply between ST, XY and Cytonome.

Defendants argue that if the claims against Premium Genetics are not precluded, then they should be dismissed because Premium Genetics is not subject to personal jurisdiction in this court as Premium Genetics is incorporated and has its principal place of business in the United Kingdom, making the exercise of general jurisdiction inappropriate. As defendants observe, Premium Genetics owns no property and has no employees in Wisconsin. Nor did the filing of the '499 patent application occur in

Wisconsin, as it was a Virginia-based attorney who filed the application and was responsible for its prosecution.

Plaintiffs counter that Premium Genetics is an intellectual property holding company whose business consists largely of obtaining patent application disclosures and assignments of patent rights from its Wisconsin-based sister company, ABS, and then licensing those patents back to ABS in Wisconsin for commercial activities related to GSS technology. This activity, argues defendants, led to the destruction of XY's protocol-related trade secrets. It is relevant, then, that the named inventors on the '499 patent application are Wisconsin residents.

If ABS's allegations are credited, therefore, the claimed invention in the '499 patent directly stems from research and development work on the GSS system that was performed by ABS employees in Wisconsin. Consequently, the present claims can fairly be said to arise out of the suit-related conduct of Premium Genetics in Wisconsin. Adjudication by this court is therefore consistent with due process requirements, as specific jurisdiction is appropriate when "the defendant's suit-related conduct [creates] a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). "Once the requirements of due process are satisfied, then there is little need to conduct an independent analysis under the specific terms of the Wisconsin long-arm statute itself because the statute has been interpreted to go to the lengths of due process." *Felland v. Clifton*, 682 F.3d 665, 678 (7th Cir. 2012).

ORDER

IT IS ORDERED that defendants' motion to dismiss (dkt. #33) is DENIED

without prejudice for the reasons set forth above.

Entered this 28th day of September, 2018.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge