**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

---

ABS GLOBAL, INC.,

    Plaintiff/Counterclaim Defendant,

v.

INGURAN, LLC d/b/a SEXING TECHNOLOGIES,

    Defendant/Counterclaim Plaintiff,           No. 14-cv-503-wmc

and                                                      **FILED UNDER SEAL -**
                                                      **CONTAINS HIGHLY**
XY, LLC,                                            **CONFIDENTIAL**
                                                      **INFORMATION**
    Intervenor-Defendant/Counterclaim Plaintiff,

v.

GENUS PLC,

    Counterclaim Defendant.

---

INGURAN, LLC d/b/a STGENETICS, XY, LLC,
and CYTONOME/ST, LLC,

    Plaintiffs/Counter Defendants,

        v.

                                                      No. 17-cv-446-WMC

ABS GLOBAL, INC., GENUS PLC, and
PREMIUM GENETICS (UK) LTD,

    Defendants/Counter Claimants

---

**PLAINTIFF'S BRIEF IN SUPPORT OF**
**PROPOSED FORMS OF JUDGMENT**

Pursuant to the Court's Opinion and Order ('503 Lit., Dkt. 1197) ("Order"), Inguran, LLC d/b/a STgenetics, Cytonome/ST, LLC, and XY, LLC (collectively, "ST") hereby submit their proposed forms of judgment in the above-captioned cases. ST's proposed Second Amended Final Judgment for Case No. 14-cv-503 ("ABS I") is attached hereto as Exhibit A and the proposed Final Judgment for Case No. 17-cv-446 ("ABS II") is attached as Exhibit B. These proposed forms of judgment are supported by the Declaration of James Malackowski, filed concurrently, which details his calculations of the amounts specified in the proposed judgments. Exhibits C and D are redlined versions of the proposed judgments showing the differences between ST's proposals and the most recent draft of ABS's proposals received by ST. After meeting and conferring, the parties have only a few points of disagreement, which ST addresses in turn in the sections below.

## I. ABS's Refusal to Provide Reliable Updated Sales Data

ST's calculations are based on the only reliable ABS sales data in ST's possession at the time of filing (specifically, data for sales of U.S.-made units through September 10, 2019, and for sales of foreign-made units through June 30, 2019). At first, ABS represented to ST that it would provide updated sales data allowing the parties to calculate damages and ongoing royalties through March 31, 2020. Just days before the proposed judgments were due, however, ABS reneged, blaming COVID-19 and the unreliability of data that was being drawn from "various worldwide data sources" on short notice. In doing so, ABS weakly tried to pin the blame on ST's request for a simple declaration verifying the data's accuracy, but the refusal to provide such a declaration is itself a testament to the data's unreliability.[1] And while ABS claimed it

---

[1] The need for sworn data is obvious. If ST agrees to a judgment that depends on inaccurate sales data, it would have no recourse if it later discovers the inaccuracy.

1

would revert to a form of judgment that does not rely on updated figures, it reneged on that representation as well by including partially updated foreign sales figures in its calculations (which are objectionable for additional reasons described in Section II below). To the extent ABS's proposed forms of judgment incorporate more recent figures, the Court should *not* use them. Instead, the final judgments should contain damages figures based only on the sales data that was already provided to the Court last fall, and should require ABS to report and pay the royalties owed on more recent sales within sixty (60) days after entry of the judgments.

## ABS I JUDGMENT

### II. ABS Improperly Includes Imported Sexed Semen in Its Proposed Judgment

ABS's proposed judgment attempts to surreptitiously undercut one of ST's claims in the currently-pending ABS III litigation (No. 3:20-cv-85) by including approximately 30,000 "imported" straws in its ongoing royalty calculations. In ABS III, ST alleges that ABS infringes the '987 Patent by (among other things) importing straws of sexed semen made using the GSS system in foreign countries. ABS III, Dkt. 1 at ¶¶ 39-53. This infringement-by-importation was not at issue in ABS I, nor could it have been—ABS did not commercialize the GSS system until well after the ABS I trial and entry of judgment. *See* ABS III, Dkt. 1 at ¶¶ 40, 44; ABS III, Dkt. 53 at 11. Nevertheless, ABS tries to stave off ST's claims in ABS III by seeking to preemptively grant ST damages for imported straws that only properly are at issue in ABS III (presumably "Red X" sexed semen made by a Norwegian company called Geno). If the Court uses ABS's calculations of the ABS I ongoing royalty, ABS will undoubtedly argue that ST has been made whole for these imported units and therefore should be precluded from asserting its ABS III infringement-by-importation claim. But this amended judgment is supposed to be a simple ministerial act that tweaks the existing judgment to reflect the outcome of the enablement re-trial. It is not supposed to be an effort to settle or covertly attack the ABS III complaint, and ST

does not waive or otherwise seek to satisfy any of its ABS III claims by submitting this proposed judgment. Simply put, the Court should *not* include foreign-made units in the damages awarded for the '987 Patent.[2]

## ABS II JUDGMENT

### III. ST Uses a Previously-Agreed Prejudgment Interest Calculation Method; ABS Does Not

In calculating prejudgment interest for the ABS II judgment, ST uses the same methodology to calculate prejudgment interest as was used—by agreement of the parties and approval of the Court—to calculate prejudgment interest in ABS I, whereas ABS uses a new and different methodology in an attempt to cut ST's prejudgment interest by over $300,000. In ABS I, ST's expert calculated prejudgment interest by using the average prime rate for the year in which the straws were sold, compounded annually (ABS I, Dkt. 777, and 777-2), and this calculation method led to an agreed prejudgment interest figure in the jointly-submitted proposed judgment. *See* ABS I, Dkt. 778. Here, ST's damages expert uses the same method, conservatively assuming that every straw was sold on the last day of the relevant calendar quarter. *See* Malackowski Dec., Exhibit 3.1. Without justification, ABS now deviates from the previously-used calculation method, clearly for no reason other than to limit ST's recovery.

### IV. The Enhanced Ongoing Royalty Should Apply to All Straws Sold Post-Verdict

ST's proposed judgment addresses a large gap in the Court's Order by applying the $3.25 per-straw enhanced ongoing royalty to <u>all</u> straws sold by ABS after the jury rendered its verdict. The Order does not specifically address the vast majority of straws that would likely be subject to an ongoing royalty, including (i) straws sold after the verdict, but before the judgment, and (ii)

---

[2] These foreign-made units of course are includable in the damages due ST for the Cytonome Patents, as set forth in the Court's Order. But ST has never sought damages on the '987 Patent for foreign-made units, and the parties have never tried this issue.

3

straws sold after the judgment that were made using pre-judgment microfluidic chips. Instead, the Order addresses only a narrow category of straw sales, namely "sales of straws produced on infringing chips that were themselves manufactured after the judgment entered in this case" (Order at 25), effectively granting ABS a windfall for the 9-month interval between the jury's verdict and entry of judgment. Based on the Court's rationale for enhancing the ongoing royalty rate above the rate set by the jury, and considering that the hypothetical negotiation for the enhanced royalty would have taken place on the day of the jury's infringement verdict, the Court should also enhance the ongoing royalty for all straws sold after the verdict, and which were made with an infringing microfluidic chip, regardless of when the straws were made or when the microfluidic chips used to make them were manufactured.

Ongoing royalty rates are typically enhanced because of the fundamentally different positions of the parties after entry of the verdict. The Order recognizes this fact, grounding its analysis in Federal Circuit case law that explicitly directs district courts to account for the "fundamental difference . . . between a reasonable royalty for pre-verdict infringement and damages for post-verdict infringement." Order at 22-23 (quoting *Amado v. Microsoft Corp.*, 517 F.3d 1353 (Fed. Cir. 2008) (emphases added). In line with this case law, the Court evaluated the parties' changed circumstances at the time of the verdict and determined that they warranted enhancing the royalty. Specifically, the Court found that the jury's verdict of infringement and validity increased ST's bargaining power (Order at 23), but that the amount of the enhancement would be tempered due to the monopoly findings in ABS I and the parties' knowledge of ABS's actual profitability (Order at 24). This rationale applies equally to all post-verdict straw sales. The Order, however, applies one ongoing royalty rate to some post-verdict straw sales and a different ongoing royalty rate to others. ST's proposed judgment addresses this dissimilar

4

treatment of post-verdict straws sales by applying the $3.25 enhanced ongoing royalty to all straws sold post-verdict.

## V. ABS Adds a Vague and Overreaching Statement That "Any Straw Will Be Subject Only to a Single Royalty"

ST also objects to the sweeping statement in ABS's proposed form of judgment that "[f]or the avoidance of doubt, any straw will be subject to only a single royalty." First, this is incorrect on its face—straws that infringe both the '987 Patent and the Cytonome patents will be subject to more than a single royalty. Second, the ABS I judgment contains no such language, demonstrating that such a "clarification" is unnecessary. And third, while ABS claims it needs this language to address straws that are "the subject of a subsequent transfer or sale," ABS states that this is only one example situation that would be affected. Clearly there are other situations ABS intends to address, but the full scope and effect of ABS's added language is unknown and should not be adopted by the Court.

## VI. ABS's Untried Invalidity Claims Should Be Dismissed With Prejudice

The Court should dismiss ABS's invalidity claims as to the '161 patent, the '912 Patent and some claims of the '476 Patent *with* prejudice. ABS could have pursued its declaratory judgment counterclaims of invalidity all the way to trial. It chose not to. Now that trial is over, ABS has lost its chance and ABS's invalidity claims should be dismissed with prejudice.

## VII. The Royalty Reports Should Contain at Least Some Meaningful Detail

ST's proposal requests a modest amount of detail in ABS's ongoing royalty reports, but ABS's proposal removes even that limited amount of information. The royalty reports should contain more than just an indication of the total units sold so that ST can better monitor ABS's ongoing royalty payments for irregularities and inconsistencies.

Dated: June 2, 2020                                                    Respectfully submitted,

/s/ Kirt S. O'Neill
KIRT S. O'NEILL
Texas State Bar No. 00788147
(admitted *pro hac vice*)
koneill@akingump.com
DANIEL L. MOFFETT
Texas State Bar No. 24051068
(admitted *pro hac vice*)
dmoffett@akingump.com
GEORGE A. L. ROSBROOK
Texas State Bar No. 24070141
(admitted *pro hac vice*)
arosbrook@akingump.com
CLAYTON N. MATHESON
Texas State Bar No. 24074664
(admitted *pro hac vice*)
cmatheson@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD, LLP**
112 East Pecan, Suite 1010
San Antonio, Texas 78205
Telephone:  (210) 281-7000
Facsimile:  (210) 224-2035

THOMAS W. LANDERS, IV
Texas State Bar No. 24102057
(admitted *pro hac vice*)
tlanders@akingump.com
**Akin Gump Strauss Hauer & Feld LLP**
1111 Louisiana Street, 44th Floor
Houston, Texas  77002
Telephone:  (713) 250-2137
Fax:  (713) 236-0822

Sarah A. Zylstra
Wisconsin State Bar No. 1033159
BOARDMAN & CLARK LLP
One South Pinckney, Suite 410
P.O. Box 927
Madison, Wisconsin 53701-0927
Telephone:  (607) 257-9521
szylstra@boardmanclark.com

**ATTORNEYS FOR PLAINTIFFS INGURAN, LLC /d/b/a STGENETICS, XY, LLC, and CYTONOME/ST, LLC**

6

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been served upon all counsel of record via the Court's CM/ECF system on June 2, 2020.

/s/ Kirt S. O'Neill
Kirt S. O'Neill